UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERTA K. FAUL,

                        Plaintiff,

      v.                                      06-CV-1169

JOHN E. POTTER, Postmaster General
of the United States Postal Service, a
Federal Agency,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff commenced the instant action pursuant to 42 U.S.C. § 2000e, et seq. claiming that she was retaliated against for engaging in protected activity. By Decision and Order dated November 5, 2008, the Court granted Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 and dismissed the Complaint in its entirety. Presently before the Court is Plaintiff's motion for reconsideration on the ground that the government's reply papers included the affidavit of Deborah Oeser, whose identity was not previously disclosed to Plaintiff through the discovery process.

        Plaintiff moves for reconsideration on the ground that there has been a manifest injustice. In particular, Plaintiff claims that "the Government sandbagged [her] with a brand-new witness more than 18 months after discovery began, in clear violation of our rules of civil procedure." Pl.'s Mem. of Law at 2. Plaintiff asserts that the Government's failure to disclose Oeser's identity constituted a violation of Fed. R. Civ. P. 26 and, in accordance, with

Fed. R. Civ. P. 37, the Government should, therefore, be precluded from using Oeser's affidavit. Alternatively, Plaintiff requests an opportunity to submit a sur-reply challenging Oeser's assertions. Plaintiff contends that relief is warranted because the Government has not articulated a justifiable explanation for failing to disclose Oeser's identity; Oeser's testimony was not necessary because "[t]he defense did properly disclose several witnesses who [could] purportedly support the legitimacy and validity of the Function 4 audit findings;" Plaintiff would be prejudiced by the need to re-open discovery to allow her to rebut Oeser's statements; and Oeser was readily available to the government to be disclosed at an earlier time.

The Government admits that it did not identify Oeser as a witness. The Government, nevertheless, contends that Plaintiff is not entitled to relief because: Plaintiff's motion is an effort to cure her failure to conduct discovery on the Function 4 audit; the Government disclosed other people with knowledge concerning the Function 4 audit, including the audit team members; the Government disclosed the underlying evidence that supported the statements in Oeser's affidavit; Oeser's affidavit it simply a summary of the evidence that was disclosed to Plaintiff; and Plaintiff fails to identify any new evidence raised in the Oeser affidavit that was not previously available to her.

In support of her case, Plaintiff contended that the Function 4 audit of the Carthage Post Office was conducted with the goal of excessing (eliminating) Plaintiff's position on account of her having engaged in protected activity. The Court cited the Oeser affidavit in finding that Defendants articulated a legitimate, non-discriminatory reason for conducting the Function 4 audit and excessing Plaintiff's position. For example, in the prior Order, the Court stated that:

> Defendant has submitted the affidavit of Deborah Oeser, the Acting Function 4 Coordinator for the Albany District, who states that the Carthage Post Office was selected for a Function Four audit because it was over budget, it had not been audited for five years, and the implementation of "Delivery Point Sequence" mail since the last audit decreased the manual letter volume and workload, thereby warranting a review of the Carthage Post Office's staffing needs. Oeser stated that, as a result of the audit, "the team recommended the excessing of one full time regular ("FTR") clerk because of the limited workload that existed after 9:00 a.m." The audit determined that the junior regular full-time clerk position should be excessed. This is a legitimate, non-discriminatory reason.

All of the facts stated in the Oeser affidavit are independently supported by other evidence that was in Plaintiff's possession. For example, Charney testified that a Function 4 audit is conducted when an office is over budget. Sands similarly testified that a Function 4 audit would be conducted to help streamline operations. Indeed, the testimony was that the Function 4 audits were recommend as part of the meeting of the small office standardization group. Plaintiff, as a long time employee in the Carthage Post Office, should have known when an audit was last conducted at the Carthage Post Offfice and when the Delivery Point Sequence system was implemented. Lastly, the audit team's recommendations are readily determined from the audit results and recommendations themselves. Thus, the Oeser affidavit was merely a summary of the other available evidence and the Court would reach the same conclusion without consideration of the Oeser affidavit.

The Court then moved to the question of whether, absent any presumption of discrimination, Plaintiff was able to point to sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that the decision to excess her position was based, at least on part, on the fact that she filed complaints of discrimination. Listing eight reasons that addressed Plaintiff's contentions, the Court found that there was

insufficient evidence upon which a fair-minded trier of fact could reasonably conclude that the Function 4 was a pretext for unlawful discrimination.

The Court initially concluded that the period of time that elapsed between Plaintiff's protected conduct and the decision to conduct a Function 4 audit did not, in and of itself, give rise to an inference of unlawful retaliation. This conclusion was not based upon any information in Oeser affidavit.

The Court further found that it was unclear whether Sands alone made the decision to conduct a Function 4 audit of the Carthage Post Office. This conclusion was not necessary to the Court's holding. In any event, this conclusion, which was supported, in part, by a citation to the affidavit of Oeser, was not dependent solely upon Oeser's affidavit. Rather, this finding was supported by the deposition testimony of Sands and Charney. Thus, Oeser's affidavit was cumulative. Further, Plaintiff should have been aware of the testimony of Charney and Sands that the final decision whether to conduct a Function Four audit was made by Operations Programs Support in Albany. Plaintiff also should have been aware of Timmerman's testimony that it was Mr. Loehner, Manager of Operations Programs Support, who was responsible for making the decision to do a Function 4 audit, putting together the audit team, and determining when to send the team into a particular post office. Plaintiff apparently never deposed Loehner on this issue or otherwise conducted discovery into the Function 4 process.

The Court also found that Sands, Carney, and Oeser all provided similar reasons for the audit, including that the Carthage Post Office was over budget hours, it had not been audited since 1998, and the implementation of certain automated processes warranted a review of staffing needs. Again, Oeser's affidavit is cumulative and, for the reasons

previously stated, it did not introduce any new evidence that was not already available to Plaintiff.

A significant part of the Court's conclusion on the summary judgment motion was the fact that the Carthage Post Office was not the only office undergoing a Function Four audit at the time. Similarly, the Carthage Post Office was not the only office in the district that lost positions as a result of the audits. Although this factual assertion was based, in part, upon the Oeser affidavit, it is supportable by other record evidence available to Plaintiff. For example, as stated in the prior decision, there is evidence in the record that, consistent with the affidavit of Oeser, several other offices in the Albany District were undergoing Function 4 audits, the result of which was the excessing of positions. See Landry Dep. at 15-17; Brenon Dep at 26-27 ("[O]ur Lowville office lost a clerk, so did Gouvernour."). In fact, Plaintiff had a document authored by Michael Landry stating that there was a union meeting "to discuss the impact of excessing in several offices in the area due to Function 4 reviews." Landry Dep. at 15. Evidence concerning the actual number of audits conducted in the relevant time period was not critical to determining the summary judgment motion and, in any event, was readily available to Plaintiff through witnesses identified by the Government. None of the remaining grounds relied upon by the Court were based upon any factual assertions found in the Oeser affidavit. Again, the Oeser affidavit is cumulative and merely served to summarize the existing available evidence.

For the foregoing reasons, and upon consideration of the factors set forth by the Second Circuit in Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006), under the facts and circumstances of this case, the Court finds that neither reconsideration nor permitting Plaintiff an opportunity to file a sur-reply are warranted. This is because there was

no new evidence in Oeser's affidavit. Rather, her affidavit merely summarized evidence that was in the record or provided to Plaintiff. Thus, the Court's conclusion would have been identical even without her affidavit. It, therefore, cannot be said that there has been a manifest injustice. Plaintiff's motion for reconsideration is DENIED.

IT IS SO ORDERED.

Dated: December 17, 2008

Thomas J. McAvoy
Senior, U.S. District Judge